(994 P.2d 1079)
No. 80,840

BROOK HUGHS, *Appellee*, v. VALLEY STATE BANK, TIM KOHART, and KEVIN WHITE, *Appellants*.

Opinion filed December 10, 1999.

*Deanne Watts Hay* and *Stanley R. Parker*, of Parker & Hay, L.L.P., of Topeka, for appellants.

*Brian C. Wright* and *Jeffrey D. Wicks,* of Turner & Boisseau, Chartered, of Great Bend, for appellee.

*Barbara Scott Girard*, of Topeka, for *amicus curiae* The Kansas Human Rights Commission.

Before CHIEF JUSTICE MCFARLAND, presiding, WAHL, S.J., and MARLA J. LUCKERT, District Judge, assigned.

WAHL, J.: Valley State Bank (VSB), Tim Kohart, and Kevin White, defendants, appeal from the district court decision dismissing without prejudice plaintiff Brook Hughs' retaliation action

against them under the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 *et seq.* The Kansas Human Rights Commission (KHRC) has filed a brief as *amicus curiae.*

Plaintiff Brook Hughs was employed by defendant VSB between 1981 and 1994. In early 1994, Hughs filed a complaint with the KHRC, alleging sex discrimination by her supervisor, defendant Kevin White. Because the complaint was untimely under state law, it was not docketed by the KHRC. However, the KHRC forwarded the complaint to the federal Equal Employment Opportunity Commission (EEOC), which docketed the case in its agency.

In April 1994, VSB suspended Hughs' employment, and she was ultimately terminated in May 1994. On April 19, 1994, Hughs filed a charge with the EEOC, contending VSB had retaliated against her for filing the prior complaint. These allegations were set forth in an EEOC Form 5 which indicated Hughs wanted the charge filed with both the EEOC and the KHRC. The only employer identified anywhere in the complaint was VSB.

The EEOC forwarded a copy of Hughs' retaliation charge to the KHRC. The KHRC sent a letter to Hughs advising her to contact the KHRC if she wished to file a state complaint. Hughs contends she never received this letter. Because Hughs did not respond, the KHRC did not formally docket her retaliation complaint in its records.

During this time, there existed a worksharing agreement between the KHRC and the EEOC. There were also related contracts between the two agencies governing federal funding to the KHRC for investigating charges filed under the dual system.

In September 1994, the EEOC issued right to sue letters to Hughs on both the original and the retaliation charge. Hughs thereafter filed a civil action in federal district court alleging the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994) *et seq.*, and the KAAD.

During the federal case, the court ordered the KHRC to produce its records of Hughs' complaints. In response, the KHRC advised the federal court that no complaint from Hughs had ever been docketed with the agency. Defendants later moved to dismiss the federal suit, citing failure to exhaust administrative remedies

and lack of federal court jurisdiction. In support of the latter argument it was asserted that VSB did not employ enough individuals to fall within the provisions of Title VII. The case was dismissed by the federal court based on defendants' uncontested motion. A week later, another order was issued by the federal court, dismissing the case without prejudice.

Hughs filed the present action in Hamilton County District Court shortly after the dismissal of the federal suit. The sole claim was that Hughs' termination was contrary to Kansas public policy. The defendants answered, asserting various affirmative defenses, including failure to exhaust administrative remedies. In her first amended petition, Hughs added a claim of retaliation under the KAAD. Neither complaint alleged Hughs exhausted any administrative remedies.

After discovery, defendants filed a motion for summary judgment, asserting that plaintiff's only claim for relief was under the KAAD and that she failed to timely file a complaint with the KHRC. Because it was now too late to file such a charge, the defendants claimed they were entitled to judgment as a matter of law. In her response, Hughs contended that the filing of her EEOC retaliation charge, which was forwarded to the KHRC, was sufficient to initiate proceedings before the KHRC. She also alleged that any filing date should be equitably tolled because the EEOC misled her into thinking no other filing was necessary.

In January 1998, the district court ruled on the motion. The court cited various KHRC administrative regulations and the EEOC-KHRC worksharing agreement to find that Hughs' EEOC complaint was "filed" with the KHRC and state administrative proceedings were therefore timely commenced. Because no final action had been taken by the KHRC, the district court found Hughs had not exhausted her administrative remedies. Accordingly, the complaint was dismissed without prejudice so Hughs could exhaust those remedies. Defendants timely appeal from that order.

*Does this court have jurisdiction to hear this appeal?*

The parties have argued the merits of this case without questioning the jurisdiction of this court. However, an appellate court

has the duty to question jurisdiction on its own initiative. *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). Parties cannot confer jurisdiction by consent or by failing to assert lack of jurisdiction. *Copeland v. Robinson*, 25 Kan. App. 2d 717, 720, 970 P.2d 69 (1998), *rev. denied* 266 Kan. 1107 (1999).

The question is whether the trial court's ruling constitutes a final, appealable order. A final decision generally disposes of the entire merits of the case and leaves no further questions or the possibility of future directions or actions by the court. *State ex. rel. Board of Healing Arts v. Beyrle*, 262 Kan. 507, 509, 941 P.2d 371 (1997). While there was a final order in this case in the sense that this proceeding has concluded, it is not clear whether it is final for purposes of appeal.

Generally, a district court order remanding an administrative proceeding to the agency for additional findings of fact is not a final, appealable order. *Holton Transport, Inc. v. Kansas Corporation Comm'n*, 10 Kan. App. 2d 12, 690 P.2d 399 (1984), *rev. denied* 236 Kan. 875 (1985).

*Holton Transport* does not seem to control as this case is not a direct appeal from an administrative agency action. Instead, it is an independent cause of action under the KAAD. See *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 305, 580 P.2d 1315 (1978). In addition, the trial court did not remand this case to the agency but simply dismissed the case without prejudice so the administrative remedies could be exhausted.

The Supreme Court has held that a defendant could not appeal from the denial of a summary judgment motion with respect to claims that were voluntarily dismissed without prejudice by the plaintiff. See *Smith v. Welch*, 265 Kan. 868, 883, 967 P.2d 727 (1998).

This case does not fit neatly with the *Smith* holding. In *Smith*, but for plaintiff's voluntary dismissal, the trial court had issued no final ruling on the plaintiff's claims. Here, the trial court dismissed plaintiff's claims without prejudice as premature. However, the trial court's ruling necessarily determines the administrative agency has jurisdiction to proceed with an investigation and that a second suit could follow thereafter. We have found no Kansas cases in

which a defendant was allowed to file or prohibited from filing an appeal when the trial court dismissed without prejudice. The Supreme Court has permitted an appeal from an order overruling a motion to dismiss when the ground for dismissal was lack of jurisdiction. *Hoffman v. Dautel*, 190 Kan. 131, 135, 373 P.2d 191 (1962); *Dick v. Drainage District No. 2*, 187 Kan. 520, 524, 358 P.2d 744 (1961).

Federal courts have interpreted their statutes to permit a defendant to appeal from dismissals without prejudice when the defendant claims the dismissal should have been with prejudice. See, *e.g., Farmer v. McDaniel*, 98 F.3d 1548, 1549 (9th Cir. 1996), *cert. denied* 520 U.S. 1188 (1997) (dismissal of habeas corpus petition without prejudice appealable when State argued petition should be dismissed with prejudice); *Kirkland v. National Mortg. Network, Inc.*, 884 F.2d 1367, 1369-70 (11th Cir. 1989) (voluntary dismissal without prejudice appealable by defendant seeking to challenge court's order disqualifying counsel); *Massachusetts Fire & Marine Ins. Co. v. Schmick*, 58 F.2d 130 (8th Cir. 1932); see also 15A, Wright, Miller & Cooper, Federal Practice & Procedure, § 3914.6 (1992) (defendant can appeal dismissal without prejudice in order to argue dismissal should have been with prejudice).

While the district court dismissed the case so the KHRC could complete its administrative procedures, defendants contend that both the KHRC and the district court lack jurisdiction to hear Hughs' claims. As a result, defendants contend, they are adversely affected by the dismissal without prejudice as they may be subject to further action by the KHRC and subject to the potential of a second lawsuit. *Cf. Domino Sugar v. Sugar Workers Local 392*, 10 F.3d 1064, 1067 (4th Cir. 1993) (dismissal of labor dispute without prejudice for failure to exhaust contractual remedies was appealable because ruling required plaintiff/employer to proceed to arbitration before seeking judicial relief).

These circumstances are unique, but we conclude that this court does have jurisdiction to hear this appeal.

*Did the filing of a charge of discrimination with the EEOC constitute the filing of a complaint with the KHRC?*

In denying the defendants' motion to dismiss, the district court ruled that Hughs' filing of a retaliation charge with the EEOC constituted the filing of a charge with the KHRC. The court concluded that (1) the EEOC charge contained all the information required by the KAAD and KHRC regulations; (2) the KHRC received a copy of the EEOC charge within 6 months; and (3) the worksharing agreement between the agencies allowed the EEOC charge to be accepted as a KHRC complaint. Defendants challenge the first and third conclusions reached by the court. The KHRC, through its *amicus* brief, joins the defendants in these arguments.

This court is required to interpret the Kansas statutes and regulations as well as the worksharing agreement. Contrary to Hughs' assertions, this is not a case where the trial court exercised any discretion. The trial court did not have discretion to determine whether it had jurisdiction to hear Hughs' claims.

The parties agree that persons seeking to pursue a claim under the KAAD must exhaust their administrative remedies prior to filing suit. See *Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 309-10, 885 P.2d 1197 (1994). To initiate administrative proceedings under the KAAD, a complaint must be filed with the agency within 6 months of the unlawful conduct. K.S.A. 44-1005(i). The dispute is whether Hughs commenced an administrative action with the KHRC.

The interpretation of a statute is a question of law, and the appellate court's review of a question of law is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). Interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is generally entitled to great deference. If there is a rational basis for the agency's interpretation, it should be upheld on judicial review. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996). The courts, however, are the final arbiters in interpreting statutes and will take corrective action if an administrative body's interpretation is erroneous as a matter of law. *In re Tax Appeal of*

*Univ. of Kan. School of Medicine*, 266 Kan. 737, 749, 973 P.2d 176 (1999).

Similarly, when interpreting administrative regulations, the courts generally will defer to an agency's interpretation of its own regulations. The agency's interpretation will not be disturbed unless it is clearly erroneous or inconsistent with the regulation. *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P.2d 1225 (1996). The administrative agency may not use its power to issue regulations to alter the legislative act which is being administered. *In re Tax Appeal of Newton Country Club Co.*, 12 Kan. App. 2d 638, 647, 753 P.2d 304, *rev. denied* 243 Kan. 779 (1988).

The trial court also based its ruling on the agency relationship created by the EEOC-KHRC worksharing agreement. The interpretation and legal effect of a written agreement is a question of law over which an appellate court exercises unlimited review. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). Whether a contract is ambiguous also is a question of law over which the appellate court has unlimited review. *In re Estate of Sanders*, 261 Kan. 176, 181-82, 929 P.2d 153 (1996).

We now turn to the central question of this appeal—whether Hughs' filing of an EEOC charge of retaliation, which was dual-filed and forwarded to the KHRC, was sufficient to initiate a state agency proceeding under the KAAD.

The KAAD requires any person aggrieved by an unlawful employment practice to sign and file with the KHRC a verified complaint containing specified information. K.S.A. 44-1005. A KHRC proceeding is commenced by the filing of "a complaint or other document." K.A.R. 21-40-9. The regulations define "complaint" as "a written statement made under oath and filed with the commission alleging any violation of any statutory or other authority, orders, rules, or regulations over which the commission may have jurisdiction." K.A.R. 21-40-1(i). The complaint must be in writing either on a form obtained from the KHRC or "on any paper suitable for a complaint." K.A.R. 21-41-2. The complaint can be received in person at KHRC offices or by mailing. K.A.R. 21-41-5.

All complaints and original pleadings filed with the KHRC must ' be signed by the party in interest, or by his or its attorney." K.A.R. 21-40-7(d); see K.A.R. 21-40-1(t). This signature constitutes a verification of the information and the signatory's belief as to the truth of the information. K.A.R. 21-40-7(g). The original must be signed and verified before a notary public. K.A.R. 21-41-2.

Hughs' EEOC charge was filled out on an EEOC Form 5 rather than the KHRC's standard form. The EEOC form contained all of the information, *i.e.*, identity of the complainant, identity of the employer, a description of the unlawful employment actions required by the Kansas statutes and regulations, but the KHRC received only a copy of the Hughs' signature and verification, not the original signature and verification.

If the KHRC were to accept copies of the signature and verification, it would be necessary to verify each signature and notarization before initiating the proceeding in order to ensure that the statutory requirements are met. A copy of a verified complaint would pose evidentiary problems because it did not contain an original signature and verification.

The KHRC cannot initiate its administrative processes based upon information received from the EEOC. Because the KHRC is bound by the confidentiality provisions of Title VII, the agency cannot disclose any information it receives from the EEOC and the information can only be used by the KHRC for internal informational purposes.

Under the worksharing agreement, the KHRC is obligated to comply with Title VII's confidentiality provisions and cannot disclose information obtained from the EEOC to the public. This prevents disclosure of information such as the existence of a Title VII charge involving particular parties or information obtained during an EEOC investigation. Public disclosure can be made only after a Title VII lawsuit has been filed.

The United States Supreme Court has interpreted these provisions to allow disclosure of information to the parties to the agency proceeding, but not to the public in general. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 598, 66 L. Ed. 2d 762, 101 S. Ct. 817 (1981). In so ruling, the Supreme Court noted that the legis-

lative history indicated the confidentiality provisions were " 'not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but rather is aimed at the making available to *the general public* of unproven charges.' " 449 U.S. at 599 (quoting 110 Cong. Rec. 12819, 12723 [1964]).

The confidentiality provisions of Title VII are inconsistent with Kansas law. The Kansas Open Records Act, K.S.A. 45-215 *et seq.*, generally requires the records of state agencies to be open to the public. K.S.A. 45-218(a). The Act does allow agencies to refuse to disclose records when federal law prohibits disclosure or when records relate to agency investigations into violations of civil laws or administrative regulations. K.S.A. 45-221(a)(1) and (11).

Despite the exceptions available under the Kansas Open Records Act, KHRC proceedings, as created by statute and regulations, eventually would conflict with the federal confidentiality rules. While the KHRC could notify VSB, as a party, that it had received and docketed an EEOC charge, other problems would arise. Under agency regulations, complaints filed with the KHRC are docketed and the docket is available for inspection and copying by the public. K.A.R. 21-40-10. While the state statutes and regulations do not allow for disclosure of conciliation procedures, K.S.A. 44-1005(e), a *public* hearing must be held if the conciliation procedures fail. K.A.R. 21-45-8(k).

Various KAAD statutory provisions and regulations conflict with Title VII confidentiality rules prohibiting public disclosure prior to the filing of a Title VII suit. The KHRC would have to treat charges initiated through the EEOC differently from those initiated with the state agency. This imposes a substantial burden on an agency with limited resources. Under these circumstances, it is not unreasonable for the KHRC to treat EEOC charges as informational only in the absence of a separate KHRC charge. Under KHRC procedures, employees filing EEOC charges must file a separate charge directly with the KHRC. This permits the KHRC to handle the claim under its own regulations, despite the stricter confidentiality rules of Title VII.

### The Worksharing Agreement

The district court also relied on the worksharing agreement in

effect between the EEOC and the KHRC in finding that Hughs' timely EEOC charge, which was forwarded to the KHRC, satisfied the requirement for filing a verified complaint with the KHRC. Under the agreement, the two agencies designated each other as "its agent for the purpose of receiving and drafting charges." The agreement also provides that each agency will inform persons "of their rights to file charges with the other Agency" and to assist persons in drafting "a charge in a manner which will satisfy the requirements of both agencies." The agreement provides the parties will use an EEOC Charge Form 5 or any charge form acceptable to both agencies. The agency which initially receives a dual-filed charge is obligated to advise the charging party and the respondent of "the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes." An agency's authority to receive charges on behalf of the other "does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge." The worksharing agreement further defines which agency had priority to initially process the charges filed with each other.

At least two federal judges in Kansas have rejected arguments that the filing of an EEOC charge satisfies a party's obligation under the KAAD. See *O'Loughlin v. The Pritchard Corp.*, 972 F. Supp. 1352, 1361 (D. Kan. 1997) (Rushfelt, Magistrate Judge); *Young v. Desco Coatings of Kansas, Inc.*, 179 F.R.D. 610, 613 (D. Kan. 1998) (Vratil, J.). The cases, however, are distinguishable. The parties in these cases failed to make any cogent legal argument to support their claims that filing with the EEOC was sufficient. The courts in these cases simply rejected the employee's assertions which cited no authority. In addition, Judge Rushfelt in *O'Loughlin* specifically noted that the plaintiff had not marked the EEOC form to indicate he wished to file his charge with both agencies.

The question of whether the EEOC's action is sufficient to initiate state proceedings for purposes of pursuing a claim under the state anti-discrimination laws has not arisen frequently. Unfortunately, the cases in which the issue has been considered are of little or no precedential value. The cases fail to detail the exact terms of the worksharing agreement between the federal and state agencies.

The EEOC has utilized different types of worksharing agreements with different agencies. See *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 117, 100 L .Ed. 2d 96, 108 S. Ct. 1666 (1988) (noting worksharing agreements are individually negotiated).

The terms of the worksharing agreement before us fail to clearly spell out the effect that the filing of an EEOC charge would have with respect to exhausting administrative remedies for a KAAD claim. While the agreement designates the EEOC as an agent for the KHRC for drafting complaints, it does not clearly provide that one charge would be acceptable at both the state and administrative level. The agreement mentions using an EEOC Form 5 but also indicates that any other form agreeable to the parties could be used. Finally, the agreement specifically states that each agency will tell complainants of their rights and obligations under parallel federal or state laws. Simply stated, the worksharing agreement is ambiguous.

The record is wholly silent about the circumstances leading to the execution of the worksharing agreement. Although it filed an *amicus* brief in this court, the KHRC did not participate in the trial court. There is no evidence in the record of the EEOC's interpretation of the worksharing agreement.

The record does reflect some evidence that the EEOC and the KHRC had complainants file charges on separate agency forms. When Hughs filed her original discrimination charge with the KHRC, she used the KHRC rather than the federal form. When Hughs filed her retaliation charge with the EEOC, she completed the EEOC Form 5. The KHRC, after receiving a copy of the EEOC charge, sent a letter to Hughs inviting her to file a charge with the state agency. Even if Hughs did not receive this letter, it provides some insight as to KHRC's interpretation and implementation of the worksharing agreement.

Although KHRC's position was not asserted before the trial court, it is clear from the *amicus* brief that KHRC's standard operating procedure was not to docket an EEOC charge as an active state case unless a separate KHRC charge was filed. This is logical in a practical sense because many dual-filed charges are handled solely by the EEOC and the complainant pursues only federal rem-

edies. Thus, the charge is sent to the state agency only to comply with federal exhaustion requirements under 42 U.S.C. § 2000e-5 (1994).

The only evidence presented at the summary judgment hearing showed an ambiguous worksharing agreement that was interpreted by KHRC to require employees to file separate claims with the state agency to initiate proceedings under the KAAD. Hughs failed to present any evidence, other than an out-dated worksharing agreement to counter KHRC's interpretation and implementation of the worksharing agreement. Under these circumstances, absent a basis for estoppel, the district court erred in not granting the defendants' motion for summary judgment and not dismissing plaintiff's claim with prejudice for failing to timely file a complaint as required by the KAAD.

### Plaintiff's Estoppel Claims

In her response to the summary judgment motion, Hughs argued that she was told the EEOC charge was all that was required to initiate state proceedings as well. She claims that the EEOC's inaction should not be imputed to her and/or its misrepresentations should estop the defendants from relying on her failure to file separate charges with the KHRC.

We need not determine whether the EEOC's action could estop the defendants from raising the exhaustion defense because the record fails to establish sufficient facts to support a claim of equitable estoppel in this case.

"Equitable estoppel is the effect of the voluntary conduct of a party that precludes that party, both at law and in equity, from asserting rights against another who relies on such conduct. A party seeking to invoke equitable estoppel must show that the acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed. There must also be a showing the first party rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 382-83, 855 P.2d 929 (1993).

The EEOC is not a party to this action, and Hughs makes no claim of estoppel against the defendants.

Reversed and remanded with instructions to enter judgment for the appellants.