**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID L. BELL,

        Plaintiff - Appellant,

 v.

THE CITY OF TOPEKA, KANSAS, a
municipal corporation; BUTCH FELKER,
former mayor, as official of the city of
Topeka, Kansas; JAMES A. MCCLINTON,
former mayor, as official of the city of
Topeka, Kansas; ED E. KLUMPP, Chief of
the City of Topeka Police Department, as an
official of the city of Topeka, Kansas;
FOUR UNKNOWN NARCOTICS
AGENTS OF THE CITY OF TOPEKA
POLICE DEPARTMENT, as individuals
and as officials of the city of Topeka,

        Defendants - Appellees.

No. 07-3204
(D. Ct. No. 06-CV-4026-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Circuit Judge, **TACHA**, and **LUCERO**, Circuit Judges.

      Plaintiff-Appellant David L. Bell filed this 42 U.S.C. § 1983 claim against the City

of Topeka and "Four Unknown Narcotics Agents of the City of Topeka Police

---

     [*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Department" after he was allegedly beaten during the execution of a search warrant on a house in Topeka, Kansas. After the statute of limitations expired, Mr. Bell sought to amend his complaint to name the specific officers involved in the beating. The district court denied leave to amend, reasoning that the amendment did not relate back to the original complaint under Fed. R. Civ. P. 15(c)(1)(C) and that neither equitable nor public policy considerations affected the running of the limitations period. The court then granted summary judgment in favor of the City of Topeka. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

Just before midnight on March 3, 2004, Mr. Bell and his girlfriend drove to a residence on Swygart Street in Topeka. Mr. Bell's girlfriend went into the house while Mr. Bell waited outside in his car. After a few minutes, Mr. Bell honked his horn to tell his girlfriend to "come on."

Around this time, officers from the Topeka Police Department ("TPD") arrived at the residence with a search warrant. They were dressed in black clothing with "POLICE" written on the back. Hearing the car honk, one or more officers broke out the window of Mr. Bell's car, opened the driver's-side door, and pulled Mr. Bell out. Mr. Bell claims that the officers immediately handcuffed him and shoved him against the car, causing him to suffer a dental injury. Then, according to Mr. Bell, he was beaten on his legs and lower back, after which he fell to the ground where the officers forced him to lie face down in a puddle of water. He also claims the officers threatened to shoot him. He was

-2-

arrested and later released.

On March 2, 2006, nearly two years after the incident, Mr. Bell filed the complaint in this case, alleging the officers violated his constitutional rights by using excessive force. The complaint also contains claims against the City of Topeka for its alleged failure to train and supervise the officers. Relevant to this appeal, Mr. Bell named as defendants the City of Topeka and "Four Unknown Narcotics Agents of the City of Topeka Police Department."[1] On May 12, 2006, as part of its initial disclosures under Fed. R. Civ. P. 26, the City of Topeka provided Mr. Bell with the names of the individual officers involved in the raid. On May 24, Mr. Bell filed an amended complaint substituting the officers' names for the "Unknown Officers."

Due to the advanced stage of the litigation, the district court struck the amended complaint and instructed Mr. Bell to file a motion seeking leave to amend. *See* Fed. R. Civ. P. 15(a)(1)–(2). After considering arguments from all parties, the court denied the motion, reasoning that the proposed amendment was futile because the claims against the individual officers were barred by a two-year statute of limitations. *See* Kan. Stat. Ann. § 60-513(a). The court then granted summary judgment in favor of the sole named defendant, the City of Topeka.

---

[1]Mr. Bell also named former Mayor Butch Felker, former Mayor James A. McClinton, and Chief of the City of Topeka Police Department Ed E. Klumpp. The district court later dismissed these defendants, and Mr. Bell does not challenge that order.

## II. DISCUSSION

A.      Amending the Complaint

1.      Addition of New Parties

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be freely given when justice so requires.  In general, a court may refuse leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotation omitted).  We have explained that a "proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001).  "This court reviews de novo a district court's refusal to grant leave to amend a complaint based on the court's conclusion that the amendment would be futile."  *Id.* at 1239.

In this case, Mr. Bell seeks to amend the complaint after the statute of limitations has run.[2]  Therefore, the proposed amendment is futile unless it relates back to the original complaint under Fed. R. Civ. P. 15(c).  Substituting a named defendant for an original, unknown "John Doe" defendant amounts to adding a new party, *see Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004), and an amendment that adds a new party

_____

[2]Kansas's two-year personal-injury statute of limitations under Kan. Stat. Ann. § 60-513(a)(4) applies in this case.  *See Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) ("[T]he forum state's personal injury statute of limitations should be applied to all § 1983 claims.").

relates back to the complaint when the party to be brought in by amendment "[1] received such notice of the action such that it will not be prejudiced in defending on the merits; and [2] knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii).

The district court properly denied Mr. Bell leave to amend. As a matter of law, there was no mistake concerning the identity of the individual officers in this case. We have specifically held that "a plaintiff's lack of knowledge of the intended defendant's identity is not a mistake concerning the identity of the proper party within the meaning of [Rule 15(c)(1)(C)]." *Garrett*, 362 F.3d at 696 (quotation omitted). In other words, a "plaintiff's designation of an unknown defendant . . . in the original complaint is not a formal defect of the type [the rule] was meant to address," and a later amendment that specifically names that defendant does not relate back to the original complaint. *Id.* at 697.

2.      Statute of Limitations

Mr. Bell argues that the two-year statute of limitations should be equitably tolled, making the amendment timely and relation back irrelevant. We apply Kansas law on this point. *See id.*; *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). In Kansas, a trial court cannot toll a limitations period; only the legislature, by statute, may do so. *See McCoy v. Wesley Hosp. & Nurse Training Sch.*, 362 P.2d 841, 847 (Kan. 1961); *Underhill v. Thompson*, 158 P.3d 987, 995 (Kan. Ct. App. 2007). Mr. Bell, however,

does not cite any statutory tolling provisions in his brief, let alone one that would apply in these circumstances.

Raising a somewhat similar argument, Mr. Bell contends that the defendants should be equitably estopped from asserting the statute of limitations as a defense. The Kansas Supreme Court has explained the showing required by a party asserting equitable estoppel:

> A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.

*Bowen v. Westerhaus*, 578 P.2d 1102, 1105 (Kan. 1978) (quotation omitted). Moreover, with reference to the statute of limitations, Kansas courts have described equitable estoppel in the following way:

> [A] defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute [of limitations] has run, will be precluded from relying on the bar of the statute.

*Coffey v. Stephens*, 599 P.2d 310, 312 (Kan. Ct. App. 1979).

Kansas has applied this theory in varying circumstances. For example, in *Robinson v. Shah*, which Mr. Bell cites in his brief, the defendant doctor negligently left surgical sponges in the plaintiff's body. 936 P.2d 784, 787–88 (Kan. Ct. App. 1997). After complaining of pain, x-rays were taken that revealed to the doctor the presence of the sponges. *Id.* at 787. The doctor, however, told the plaintiff that the x-rays did not

-6-

reveal anything unusual. *Id.* Ten years and several doctors later, the plaintiff learned the truth and sued the doctor. *Id.* at 788. The Kansas Court of Appeals held that the doctor was estopped from asserting the statute of limitations as a defense. *Id.* at 798.

In this case, Mr. Bell argues that the defendants should be estopped from asserting the limitations defense because the city concealed the officers' identity from him until after the limitations period had expired. In support of his argument, Mr. Bell alleges the following facts: Six weeks after his injuries, in approximately May 2004, Mr. Bell contacted the TPD to file a complaint because his car had been damaged in the incident. The TPD (Mr. Bell does not name any specific person) told him that he could not file a complaint unless he knew the names of the officers. Mr. Bell told the TPD he had a case number that corresponded to his arrest. The TPD told him "that was not good enough."

Thereafter, and for reasons that are unclear, Mr. Bell states that he was required to call and check in with the Shawnee County Clerk of the District Court on a regular basis. After approximately a year of doing so, someone from the clerk's office told Mr. Bell that he no longer needed to call and that he would be notified if charges were filed against him. Mr. Bell then contacted the Shawnee County District Attorney's office, but could not get an answer as to whether that office would be filing charges. In addition, Mr. Bell was told by that office that it could not give him the names of the officers and that he needed a lawyer. In the summer of 2005, the district attorney's office informed Mr. Bell "that they could not divulge such information to [him] because the police reports containing the names of the officers were privileged information and [Mr. Bell] would

have to have a court order directing the District Attorney to release such information."

During this time, Mr. Bell also sought the advice of more than twenty private attorneys, none of whom would take his case.

On February 8, 2006, however, Mr. Bell met with an attorney (his counsel in this case) who agreed to represent him. On February 24, pursuant to Kan. Stat. Ann. § 12-105b, Mr. Bell's counsel wrote to the Topeka City Attorney to notify him of his intent to file a tort claim against the city. On March 6, after the complaint had been filed and after the statute of limitations had run, Mr. Bell's counsel wrote to the Shawnee County District Attorney asking for the names of the individual officers. The district attorney responded the next day. He told counsel that the case file on that particular incident had never been sent to the district attorney's office to be reviewed for a possible criminal prosecution, suggesting that he did not have the information that counsel requested. The district attorney went on to state that, in any event, the office's investigative files are not subject to disclosure unless the files constitute *Brady*[3] material.

The district court did not abuse its discretion in deciding not to apply the doctrine of equitable estoppel in this case. *Cf. Garrett*, 362 F.3d at 697 (applying abuse-of-discretion review to district court's decision involving equitable tolling). To begin, Mr. Bell's allegations regarding the Shawnee County Clerk's Office and the Shawnee County

---

[3]*Brady v. Maryland*, 373 U.S. 83 (1963).

District Attorney's Office are irrelevant, as neither are parties to this lawsuit.[4] *See Hughs v. Valley State Bank*, 994 P.2d 1079, 1087 (Kan. Ct. App. 1999). Moreover, because Mr. Bell's argument is premised on omissions rather than affirmative misrepresentations, he must show that the city (i.e., the TPD or the city attorney) had a duty to speak in this situation. *See Bowen*, 578 P.2d at 1105 ("A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, *or silence when it had a duty to speak*, induced it to believe certain facts existed." (emphasis added)). Nowhere, however, does Mr. Bell assert—let alone demonstrate—that such a duty exists under these circumstances. He did not even ask the city attorney for the names of the officers, and it is not apparent that Mr. Bell gave the TPD enough information to enable it to provide him with the officers' names.

Moreover, and quite significantly, the parties have stipulated that the front page of the Kansas Standard Offense Report in TPD Case No. 5548-04, the incident giving rise to the allegations in Mr. Bell's complaint, is an open public record subject to disclosure under the Kansas Open Records Act, Kan. Stat. Ann. § 45-215 *et seq.* If Mr. Bell had asked for this document, he would have discovered the name of the reporting officer, K. Souma, one of the officers Mr. Bell seeks to name as a defendant. And, as the district

---

[4]Mr. Bell also mentions the doctrine of unique circumstances as a basis for avoiding the bar of the statute of limitations. Kansas courts have applied this doctrine when a nonparty error causes an untimely filing. *See Underhill*, 158 P.3d at 995–96. This doctrine does not apply here, however, because Mr. Bell does not allege that a nonparty (e.g., the district attorney) committed an *error* that caused him to file an untimely motion to amend the complaint.

court reasoned, Mr. Bell might then have used discovery methods—such as deposing

Officer Souma—to learn the names of the other officers. We further note that counsel for

Mr. Bell admits that, before he filed the complaint in this case, he knew the name of one

of the other officers he now seeks to add as a defendant. Thus, equity will not aid Mr.

Bell when it is clear that he was capable of identifying the officers through other means.

*See Robinson*, 936 P.2d at 797 (noting that equitable estoppel "'is not available for the

protection of one who has suffered loss solely by reason of his own acts or omissions.

Equity aids the vigilant and not those who slumber on their rights.'" (quoting *Rex v.*

*Warner*, 332 P.2d 572, 579 (Kan. 1958))).

Mr. Bell also contends that the Kansas Open Records Act prohibited the disclosure

of the officers' names and that this counsels in favor of either estopping the defendants

from asserting the statute-of-limitations defense or otherwise permitting his claim to

proceed as timely for public policy reasons.[5] The Kansas Open Records Act states that

"public records shall be open for inspection by any person unless otherwise provided by

this act." Kan. Stat. Ann. § 45-216(a). Section 45-221(a)(10)(C) lists one of those

circumstances in which a agency need not open its records for public inspection:

> (a) Except to the extent disclosure is otherwise required by law, a public
> agency shall not be required to disclose:

---

[5]As the district court pointed out, it is not clear whether Mr. Bell presented this argument to the magistrate judge, and, accordingly, whether he preserved its review by the district court. Out of an abundance of caution, however, the district court addressed this issue.

. . .

>(10)  Criminal investigation records, except as provided herein. The district court, in an action brought pursuant to K.S.A. 45-222, and amendments thereto, may order disclosure of such records, subject to such conditions as the court may impose, if the court finds that disclosure:

. . .

>>(C) would not reveal the identity of any confidential source or undercover agent[.]

Thus, the provision allows an agency not to disclose criminal investigation records when doing so would compromise the identity of an undercover officer.

Mr. Bell argues that this provision prohibited any agency—including, apparently, the TPD—from giving him the individual officers' names because the officers wore masks, thus making them "undercover" agents within the meaning of § 45-221(a)(10)(C). We disagree with this interpretation of the statute.  An undercover officer is one who does not disclose his role or identity as an officer.  Black's Law Dictionary 71 (8th ed. 2004). Here, it is undisputed that all the officers involved wore clothing with the word "POLICE" on the back, which clearly indicated their status as police officers.  Moreover, the City of Topeka (through the TPD) has never contended that the officers involved in the incident were undercover agents and has never invoked the protections of this statutory provision.  Indeed, Mr. Bell never even filed an open-records request in this case.  And, as we explained above, filing such a request would have led Mr. Bell to discover at least one of the individual defendants Mr. Bell now seeks to name in the

-11-

complaint.  Even if the city had denied this request, Mr. Bell could have asked a court to order disclosure.  *See* Kan. Stat. Ann. § 45-221(a)(10).  Given these facts, the district court acted well within its discretion when it refused to alter the running of the statute of limitations or preclude the defendants from asserting it as a defense.

B.      Summary Judgment in Favor of the City

At the outset, we note that both parties violated our Court's rules by failing to include in the record the motion for summary judgment, supporting brief, and response.  *See* 10th Cir. R. 10.3(D)(2); *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1235 n.13 (10th Cir. 2007).  We are under no obligation to remedy this failure by obtaining for ourselves the relevant filings from the district court.  *See* 10th Cir. R. 10.3(B); *Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995).  Moreover, without these documents, we hesitate to reverse the district court's order because we cannot examine the evidence or arguments made below.  *See Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1292 (10th Cir. 2000) ("[W]e are reluctant to overturn a district court's ruling without being able to examine the evidence or arguments it heard in making its ruling.").  Compounding the problems posed by this failure, Mr. Bell has not pointed to a specific error committed by the district court, nor does he reference record facts in support of his claims.[6]  Indeed, he

_____

[6]In the fact section of his brief, Mr. Bell cites to portions of the record that contain reports evaluating the TPD's narcotics unit.  Although these reports describe police misconduct and recommend changes in the training and supervision of officers, they do not document incidents involving the use of excessive force by officers or recommend changes in the training or supervision of officers in this regard.  Because the deficiencies in training and supervision identified in these reports are not related to the constitutional

-12-

devotes fewer than two pages of his briefing on appeal to contest the district court's order. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived, and bald assertions in briefs that there are genuine issues of material fact are insufficient to merit reversal of summary judgment." (internal citations omitted)).  Therefore, in light of this inadequate argument and insufficient record, we will not reverse the district court's decision.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of leave to amend the complaint and the court's entry of summary judgment in favor of the City of Topeka.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

---

deprivation Mr. Bell alleges, this evidence does not support Mr. Bell's claims against the city.  *See Brown v. Gray*, 227 F.3d 1278, 1290 (10th Cir. 2000) (noting that "the identified deficiency in a city's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation" (quotations and citations omitted)).