No. 78,553

PEGGY L. SMITH, *Appellant/Cross-appellee,* v. LAUREN K. WELCH, M.D., *Appellee/Cross-appellant.*
(967 P.2d 727)

Opinion filed September 18, 1998.

*W. Thomas Gilman*, of Redmond & Nazar, L.L.P., of Wichita, argued the cause and was on the briefs for appellant.

*Eldon L. Boisseau*, of Turner and Boisseau, Chartered, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff Peggy Smith was injured in an automobile accident and filed suit against Edward Williams, the other driver. During the litigation, plaintiff agreed to an independent medical examination by defendant's medical expert. Plaintiff alleges that during the examination, she was asked personal and inappropriate questions and was sexually battered by the examining doctor. Plaintiff brought an action for negligence, misrepresentation, assault, battery, invasion of privacy, outrage, and violation of her right to informed consent. The district court granted the examining doctor summary judgment on the claims of informed consent, assault, battery, tort of outrage, and invasion of privacy. Plaintiff voluntarily

dismissed her negligence and misrepresentation claims to pursue this appeal. We accepted jurisdiction pursuant to K.S.A. 20-3018(c).

The relevant facts are incorporated from the district court's order granting summary judgment. Peggy Smith alleged she suffered head and neck injuries in an automobile accident on January 11, 1994, and filed an action against Edward Williams. Rather than requiring Williams' attorney to obtain a court-ordered medical examination pursuant to K.S.A. 60-235, Smith's attorney agreed his client would undergo an independent medical examination by Dr. Lauren Welch, a board-certified neurologist. The purpose of the independent medical examination was to determine the extent, if any, of Smith's head and neck injuries.

During the examination at Dr. Welch's office, while Smith and Dr. Welch were alone, Welch asked Smith a series of questions about her medical history. While taking Smith's history, Dr. Welch would snap his fingers and tell her she was not answering fast enough. Numerous times Dr. Welch told Smith she was stupid or lying and she had better start cooperating or she would not receive her settlement.

Some of Welch's questions had obvious medical relevance to a head and neck injury and other questions required a detailed statement of Smith's sexual past. Although not a complete list, Dr. Welch asked Smith whether her parents and her sister were sexually active, whether Smith was having sex with someone else while dating her present boyfriend, what qualities about her boyfriend made her want to have sex with him, whether Smith had ever had sex with more than one person at a time, and whether she had ever had sex with her sister.

While asking Smith questions of a sexual nature, Dr. Welch told Smith numerous times that she had better answer his questions because he worked for the other side and a failure to answer would result in Smith not receiving a settlement in her personal injury action. Dr. Welch asked Smith if she knew what it meant to not "count your chickens before they hatch." He stated it meant she had better not count on her settlement because she was not doing what he required.

After Dr. Welch obtained Smith's medical history, he led her to an examination room where he threw a gown at Smith and told her to undress and put on the gown. Smith did. When Dr. Welch and his nurse entered the examination room, he untied the gown and exposed Smith's breasts. Smith crossed her arms over her breasts. Welch grabbed Smith's arms and moved them away from her breasts. Dr. Welch began to examine Smith's breasts. Smith states it was unlike any other breast examination she had undergone previously. Smith asserted that Dr. Welch fondled her nipples and placed a cold stethoscope on them.

During the course of the examination, Smith repeatedly placed her hands over her breasts. Dr. Welch continually removed her hands from her breasts. Welch told Smith not to be a "baby" about the examination.

After examining Smith's breasts, Dr. Welch moved his hands towards Smith's abdomen. Smith covered her pubic region with her hands. As Welch's hands reached Smith's pubic area, he attempted to move Smith's hands. At that point, Smith sat up and ended that portion of the examination.

Dr. Welch then placed his hands on the back of Smith's head and started lifting. Smith complained that this was hurting her. Dr. Welch told her to "just take it, she would be fine."

Smith settled her claim for the injuries to her head and neck. She then filed this action against Dr. Welch, claiming the examining physician had acted negligently; violated her right to informed consent; misrepresented the need for various aspects of the examination; and committed an assault, a battery, an outrageous act, and an invasion of her privacy.

## Standard of Review

The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

In a letter to Smith's counsel, Smith's expert, Dr. Janice M. Mullinix, wrote: "It is a departure from standard neurologic practice to do a breast examination or a gynecologic examination as part of assessment of head injury or of headaches. It is a further departure from standard neurologic practice to persuade a patient to consent to these procedures."

After significant discovery, Dr. Welch filed a motion for summary judgment. The district court stated in its conclusions of law:

"20.    That Dr. Janice Mullinix, who has been retained by Plaintiff's counsel to provide expert testimony, is not disqualified as an expert because she has not performed independent medical examinations, but is not qualified legally to usurp the function of the Court in directing the scope of the examination. Accordingly, the relevance of her opinions is questionable.
◦  ◦  ◦  ◦
"22.    The nature and scope of questions about sexual activity is not within the province and understanding of laymen; rather, expert testimony is required on this issue. In light of the Plaintiff not having any expert testimony on this issue, any alleged tort relating to the nature and scope of the sexual questioning fails as a matter of law.
"23.    Inasmuch as Plaintiff, by and through her counsel, consented to the examination, the invasion of privacy and assault and battery claims fail as a matter of law.
◦  ◦  ◦  ◦
"25.    The Plaintiff's allegations, assuming the same to be true, would not cause a reasonable person to be outraged, and accordingly, the tort of outrage claim fails as a matter of law."

The district court granted Dr. Welch partial summary judgment. Smith's negligence and misrepresentation claims survived summary judgment. Smith voluntarily dismissed those claims without prejudice and appealed the grant of summary judgment. Our review is limited to Smith's claims of assault, battery, outrageous conduct, and invasion of privacy.

K.S.A. 60-235 permits a party to seek an independent medical examination when a litigant places his or her medical condition at

issue in the case. If the court determines an examination is needed, the conditions and scope of the examination are determined by the court. Because Smith agreed to an examination, there is no court order setting the conditions or scope of the examination. There is no evidence as to the agreement between counsel with respect to the conditions or scope of the medical examination except as stated in paragraph 5 of Smith's petition, which alleges:

"5. Plaintiff was involved in a motor vehicle accident on January 11, 1994, as a result of which she *sustained injuries to her head and neck*. As a result thereof plaintiff filed suit on May 6, 1994 in the Sedgwick County District Court (Case No. 94 C. 1323) to recover damages she sustained in said accident. In the course of said lawsuit, counsel for the defense requested that plaintiff submit to an independent medical examination. The examination was scheduled to be conducted by the defendant herein at his place of business." (Emphasis added.)

Dr. Welch admitted these allegations in his answer; therefore, we conclude Dr. Welch's examination was limited to a determination of Smith's "injuries to her head and neck."

*Expert Witness and Scope of Testimony*

The district court found that the testimony of Smith's expert witness, Dr. Mullinix, had little relevance because a medical expert "is not qualified legally to usurp the function of the Court in directing the scope of the examinations." The district judge's conclusion is difficult to understand. Here, there was no court-ordered examination. Rather, the parties agreed to an examination to ascertain the extent of Smith's head and neck injuries sustained in an automobile accident. Even if the district court had ordered an examination to ascertain the extent of Smith's injuries, the scope of that examination would be limited to determining the extent of the head and neck injuries plaintiff suffered in the automobile accident. Judges are not experts on neurology; the testimony by Smith's expert as to standard practice in that field is relevant. Simply stated, that is the issue to be determined in this case.

The district judge also found that the

"nature and scope of questions about sexual activity is not within the province and understanding of laymen; rather, expert testimony is required on this issue. In light of the Plaintiff not having any expert testimony on this issue, any alleged tort relating to the nature and scope of the sexual questioning fails as a matter of law."

We are unable to find any Kansas authority that requires expert testimony on the subject of the nature and scope of sexual activity.

*Amici Curiae*

The Kansas Association of Defense Counsel (KADC) and the Kansas Trial Lawyers Association (KTLA) were permitted to file *amicus curiae* briefs. KADC noted that it is critical to the defense of personal injury actions that defendants be able to test and, where possible, challenge the nature and extent of a plaintiff's alleged damages. It claims that recognition of a physician-patient relationship between plaintiff and an examining physician, or creation of negligence causes of action against such physicians, will necessarily have a chilling effect on the willingness of doctors to perform such examinations. Therefore, KADC contends, it is absolutely essential that the right of independent medical examinations be preserved.

KADC recognizes there should not be an absolute prohibition of claims alleging intentional torts committed by an examining physician. It notes that an examining physician does not have authority to sexually molest or intentionally inflict bodily harm on a person examined. KADC asserts that on the merits of this particular dispute, plaintiff has not established the necessary elements of sexual battery through expert testimony. It concludes that this court should not use this case to impose duties upon an examining physician that would allow negligence and malpractice claims to be asserted by persons injured during an independent medical examination who had never received or requested treatment from the examining doctor.

KTLA agrees that a claim for medical negligence requires proof of a physician-patient relationship and a breach of the duty created by that relationship. See *Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1994). On the other hand, it notes that a claim for assault, battery, or invasion of privacy requires no special duty. See, *e.g.*, *Taiwo v. Vu*, 249 Kan. 585, 596, 822 P.2d 1024 (1991) (elements of civil assault stated). KTLA observes that the torts of battery and invasion of privacy similarly lack any requirement of a special relationship between the parties or duty by the defendant. See generally PIK Civ. 2d 14.02 (defining civil battery) and PIK Civ. 2d

14.61 (defining invasion of privacy). KTLA concludes that Dr. Welch's argument that he cannot be liable for an intentional tort because there was no physician-patient relationship, or because his duty was to the defense counsel who hired him to conduct the medical examination, is a legal nonsequitur.

*Smith's Assertions*

Smith admits she consented to an examination to ascertain the scope of her head and neck injuries. She asserts that Dr. Welch exceeded the scope of a medical examination for head and neck injuries. She argues that even if a breast examination were required, Welch did not conduct a medical exam; he groped and sexually fondled her.

A medical examination of the body of a person is a technical invasion of privacy, battery, or trespass, regardless of its result, unless the person or some authorized person consents to it. *Younts v. St. Francis Hospital & School of Nursing*, 205 Kan. 292, Syl. ¶ 2, 469 P.2d 330 (1970). Ordinarily, as applied to a surgical operation, the distinction "between an unauthorized operation amounting to assault and battery on the one hand, and negligence such as would constitute malpractice on the other, is that the former is intentional while the latter is unintentional." *Hershey v. Peake*, 115 Kan. 562, Syl. ¶ 1, 223 Pac. 1113 (1924). The gravamen of a civil invasion of privacy, assault, battery, and sexual battery is grounded upon the actor's intention to inflict injury. See *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824 (1964).

The remedy for an invasion of one's right to privacy is a civil action. One's right to privacy is invaded if another intentionally intrudes, physically or otherwise, upon one's solitude or seclusion and if the intrusion would be highly offensive to an ordinary person. PIK Civ. 2d 14.61. It is also important to note that assault, battery, and sexual battery are intentional civil injuries and are also separate and distinct statutory crimes. "An assault is an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary." *Taiwo v. Vu*, 249 Kan. 585, Syl. ¶ 7; see K.S.A. 21-3408. Battery is intentionally or recklessly causing

bodily harm to another person or intentionally causing physical contact with another person when done in a rude, insulting, or angry manner. K.S.A. 21-3412. Sexual battery is the intentional touching of the person of another who is 16 or more years of age, who is not the spouse of the offender, and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another. K.S.A. 21-3517.

The Kansas Criminal Code, K.S.A. 21-3101 *et seq.*, does not bar, suspend, or otherwise affect any civil right or remedy, authorized by law to be enforced in a civil action, based on conduct which the code makes punishable. K.S.A. 21-3103. Assault, battery, and sexual battery are statutory crimes; however, the civil injury caused by an assault, battery, or sexual battery is not merged in the crime in that the injured party has a civil right or remedy against the perpetrator of the crime.

## Tort of Outrage

The tort of outrage has two threshold requirements that the trial court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it. *Taiwo v. Vu*, 249 Kan. 585, Syl. ¶ 4.

To prove the tort of outrage, a litigant must show: (1) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. 249 Kan. at 592.

This court has previously reviewed outrage claims. The tort of outrage was recognized in *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974). There, Dawson, who had been unable to make car payments by reason of symptoms associated with multiple sclerosis, was called repeatedly by Associates' employees who questioned her as to when she was going to make

her payments. The calls became threatening, with Associates telling Dawson her credit would be ruined, and there were intimations that her parents' business would be adversely affected because Associates did business with them. Associates also called Dawson's parents, telling them the same thing. There were no allegations that Associates' employees were rude or screamed or used name-calling. The calls caused Dawson's symptoms to radically worsen due to increased stress.

Dawson filed an action alleging that the finance company intentionally harassed her by threatening to repossess her automobile, knowing that she had multiple sclerosis and was making a claim under an insurance policy to cover the loan payments. The trial court directed a verdict in favor of the finance company. Dawson appealed.

The *Dawson* court reversed the district court, holding that a creditor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to the debtor is subject to liability for such emotional distress, and if bodily harm to the debtor results from it, for such bodily harm. 215 Kan. 814, Syl. ¶ 1.

In *Wiehe v. Kukal*, 225 Kan. 478, 592 P.2d 860 (1979), Kukal observed Wiehe threatening her husband with a pitchfork while ranting and raving at him. As a result of this experience, Kukal became severely depressed, her health became poor, she lost weight, and she cried a lot. Kukal recovered $10,000 for severe emotional distress from Wiehe as a result of her anguish.

The *Wiehe* court reversed the judgment, noting that Wiehe's conduct, uncommendable though it was, was not "extreme and outrageous" because he did not touch Kukal's husband. The *Wiehe* court found there was no evidence that Wiehe had any prior knowledge of Kukal's susceptibility to mental distress, and, in fact, the evidence was that her mental and physical health had been good and she had evidenced no tendency toward mental or emotional distress or disease prior to the occurrence on December 1, 1973, or that Wiehe intended to cause harm to Kukal.

In *Taiwo v. Vu*, 249 Kan. 585, Vu lied to the police about Sherry and Obafemi Taiwo's involvement in vandalism and accused Ob-

afemi Taiwo of battering her. The Taiwos filed a civil action against Vu, alleging assault, battery, false imprisonment, and intentional infliction of emotional distress (the tort of outrage). The jury awarded $20,000 to the Taiwos, and the trial judge assessed $3,000 in punitive damages. Vu appealed to the Court of Appeals. The Court of Appeals set aside the judgment and remanded for a new trial. Taiwo's petition for review was granted. The *Taiwo* court observed that Vu had caused harm to the plaintiff and had abused the criminal justice system for her own purposes. The *Taiwo* court reversed the Court of Appeals, finding that where reasonable people did not agree on whether the conduct was outrageous, the question is one for the jury. The verdict in the district court was reinstated. 249 Kan. at 593.

Here, the district court held that the threshold requirement, a showing that the alleged conduct of Dr. Welch could reasonably be regarded as so extreme and outrageous as to permit recovery, was not met. In reaching this conclusion, the court did not recognize the distinction between the *Wiehe* court's finding that the conduct alleged was not outrageous because there was no intent to harm the victim and the *Taiwo* court's finding that Vu's abuse of the criminal justice system and intentional harm to the plaintiffs was outrageous. Here, Dr. Welch is alleged to have intentionally committed criminal acts under the guise of performing an independent medical examination and to have caused mental distress to the plaintiff.

### Dr. Welch's Argument

Dr. Welch presents several arguments in support of the district court's grant of summary judgment. Dr. Welch first claims that as the examining physician, his duty was not to Smith, but to the entity that retained him to examine Smith. In support of this argument, Dr. Welch cites cases that conclude that a physician performing an independent medical examination has no duty to treat the person examined for illnesses or to diagnose illnesses. See *Ervin v. American Guardian Life Assur.*, 376 Pa. Super. 132, 545 A.2d 354 (1988); *Elia v. Erie Ins. Exchange*, 398 Pa. Super. 433, 581 A.2d 209 (1990); *Henkemeyer v. Boxall*, 465 N.W.2d 437 (Minn. 1991).

These cases hold that no cause of action accrues when a physician, acting on behalf of the other party in litigation, failed to treat or to diagnose an illness in the opposing party examined. However, none of the cases cited by Dr. Welch discuss whether the physician conducting the independent medical examination may negligently or intentionally injure the person examined. See *Wilson v. Winsett*, 828 S.W.2d 231, 233 (Tex. App. 1992), which holds that in performing court-ordered examinations, the physician has a duty not to cause harm or injury to the examinee. Additionally, as noted previously by KTLA, whether Dr. Welch had a duty to Smith is irrelevant as to her intentional tort claims.

Dr. Welch's second argument is that court-ordered or agreed-to examinations are appropriate even if they are invasive and potentially embarrassing to the examinee. We agree that a litigant cannot seek compensation for an injury and then refuse examination of the injury by the opposing party because that examination would be embarrassing to the injured party.

If a proper breast examination and an examination of Smith's genitalia were appropriate in investigating and determining the extent of her head and neck injuries, the potentially embarrassing aspects of such an examination, while unfortunate, would be necessary. But Smith's expert states that to determine a head or neck injury, an examination of a woman's breasts or pubic region is not necessary or appropriate. In addition, Smith alleges Dr. Welch did not perform a proper examination of her breasts; he fondled them and attempted to fondle her pubic region. Whether this part of the examination was required or performed in the manner in which Smith alleges is the issue to be determined.

Dr. Welch's final argument is that he had qualified immunity insulating him from liability for injuries caused during the examination by his negligent or intentional acts. The basis of this argument is the historical protection afforded parties and witnesses from liability for damages arising from their testimony during court proceedings. The problem with this argument is obvious. The immunity Welch asserts is directed to the testimony of the witness. If a witness testifying in open court leaped from the stand and battered the attorney questioning the witness, there is little doubt

that there would be criminal and civil liability for the battery. Asking intensely personal questions during an examination or fondling Smith's breasts and attempting to grope her genitalia does not fit within the parameters of this historical privilege.

Even though Smith's claims are intentional torts, other courts have considered a physician's liability for negligence during an independent medical examination. *Greenberg v. Perkins*, 845 P.2d 530 (Co. 1993), involved a physician performing an independent medical examination who prescribed further tests to ascertain the extent of Perkins' injuries. Prior to the testing, Perkins told the physical therapist who was to perform the tests about previous back problems she had. Concerned that the testing would aggravate Perkins' problems, the physical therapist called Dr. Greenberg to tell him of the concerns. Dr. Greenberg replied that the physical therapist should do the best she could. During the course of the tests, Perkins' back problem was aggravated, ultimately requiring surgery to correct.

In determining the extent of Dr. Greenberg's liability, the Colorado court analyzed a physician's duty of care while performing independent medical examinations. The court noted:

"Many courts set forth a 'general' rule that in the absence of a physician-patient relationship a physician owes no duty to an examinee. [Citations omitted.] Many of these same courts, however, recognize a duty of care if the examining physician undertakes in some way to act on behalf of the examinee [citations omitted] or induces reasonable reliance by the person examined. [Citations omitted.] Some courts conclude that medical malpractice standards govern, and recognize a duty of care simply on the basis of the relationship created by the referral and examination. [Citations omitted.] Others agree but temper this conclusion by expressly limiting the scope of the duty to the functions the physician agrees to undertake. [Citations omitted.] Still others hold that the absence of a physician-patient relationship precludes a malpractice action, with the concomitant broad duty of care, but that an ordinary negligence action can be maintained in appropriate circumstances. [Citations omitted.] Some of these latter cases are based on the well recognized principle that a person who assumes to act must act with care. [Citations omitted.]" 845 P.2d at 535.

Regardless of the standard of care, the Colorado court noted "all courts that have considered the issue agree, under one form of analysis or another, that a physician owes a duty of care to a non-

patient examinee to 'conduct the examination in a manner not to cause harm to the person being examined.' " 845 P.2d at 535 (citing *Rand v. Miller*, 185 W.Va. 705, 707, 408 S.E.2d 655 [1991] [quoting *Keene v. Wiggins*, 69 Cal. App. 3d 308, 313, 138 Cal. Rptr. 3]).

Dr. Welch was retained by the defendant to perform an examination and determine the extent of a head and neck injury. Although the examination was not court-ordered, it was agreed to by the parties' counsel. This agreement was in lieu of a court-ordered independent medical examination. Under either circumstance, Smith had every reason to believe she would be treated with dignity. She certainly had a right not to be criminally assaulted, battered, or sexually battered. If the allegations of such conduct are proven at trial, would an average person find a medical examination under those circumstances to be outrageous? Yes.

The parties also disagree whether a physician-patient relationship existed between Smith and Dr. Welch. A physician is obligated to his or her patient to use reasonable and ordinary care and diligence in the treatment of cases the physician undertakes, to use his or her best judgment, and to exercise that reasonable degree of learning, skill, and experience which is ordinarily possessed by other physicians. *Durflinger v. Artiles*, 234 Kan. 484, Syl. ¶ 3, 673 P.2d 86 (1983). The district court held the relationship between Smith and Dr. Welch was not an ordinary physician-patient relationship.

Was there a physician-patient relationship between Dr. Welch and Smith? No. Dr. Welch was not treating Smith or examining her to recommend a course of treatment. The physician was retained to provide an expert medical opinion on an issue involved in civil litigation. Under such circumstances, the traditional physician-patient relationship does not exist.

Does a physician performing an independent medical examination have a duty not to negligently injure the person examined? Yes. A physician performing an independent medical examination has a duty to use reasonable and ordinary care and diligence in the examination the physician undertakes, to use his or her best judgment, and to exercise that reasonable degree of learning, skill, and experience which is ordinarily possessed by other physicians. See

*Durflinger v. Artiles*, 234 Kan. 484, Syl. ¶ 3. The examining physician has a duty not to negligently cause harm or injury to the person examined.

Is the duty of a physician not to injure the person being examined affected by the fact that physician was employed by a third party? No. The duty of a physician conducting an independent medical examination not to injure the person being examined is not affected by the fact that the physician was employed to conduct the examination by a third party and no contractual relationship existed between the physician and the person being examined. *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 375, 552 P.2d 885 (1976).

A physician performing an independent medical examination is obligated to the person being examined to make a reasonable disclosure of pertinent facts and hazards within the physician's knowledge relating to the proposed examination so that the person being examined may make an intelligent decision to consent or refuse the examination.

Is the physician-patient relationship necessary for an intentional tort claim asserted by the person being examined? No. As to the intentional tort claims of invasion of privacy, assault, battery, and sexual battery, it makes no difference whether a physician-patient relationship exists.

Did the district court err in granting summary judgment on Smith's invasion of privacy, assault, battery, and sexual battery claims? Yes. Drawing inferences in favor of Smith, as required in reviewing a summary judgment, the facts alleged by Smith indicate that during the independent medical examination, Dr. Welch repeatedly grabbed Smith's hands and moved them away from her breasts so he could grope and fondle her breasts, placed a cold stethoscope on her nipples, and attempted to touch her genitalia. The acts alleged that there was an intentional touching of the person of another who is not the spouse of the offender and who did not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another. The facts alleged, if proven at trial, establish invasion of privacy, assault, battery, and sexual battery and those claims, in the context of a medical examination, are

outrageous. The district court erred in granting summary judgment.

*Cross-appeal*

Smith voluntarily dismissed without prejudice her negligence and misrepresentation claims. Yet Dr. Welch seeks to cross-appeal the district court's denial of summary judgment on those claims. As Dr. Welch acknowledges, an appeal is appropriate only after a final judgment on all claims has been rendered. *Bates & Son Construction Co. v. Berry*, 217 Kan. 322, 324, 537 P.2d 189 (1975). Because there was no final judgment on Smith's negligence and misrepresentation claims, we are without jurisdiction to determine Dr. Welch's cross-appeal.

Reversed and remanded for further proceedings.

LARSON, J., concurs in the result.