**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD C. NOWLIN,

      Plaintiff-Appellant,

v.

K MART CORPORATION,

      Defendant-Appellee.

No. 99-3186
(D.C. No. 97-CV-2468-GTV)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **MAGILL**[**] and **LUCERO**, Circuit Judges.

      This is an appeal from a grant of summary judgment to defendant-appellee

Kmart Corporation ("Kmart") in an action alleging violations of the Americans

With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., the

Employee Retirement Insurance Security Act of 1974 ("ERISA"), 29 U.S.C. §

1140, and Kansas state law. We decide whether plaintiff-appellant Donald C.

Nowlin was constructively discharged under the ADA and whether the district

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

court's grant of summary judgment was otherwise erroneous. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I

The underlying, uncontroverted facts of the case are set forth more fully in the district court's memorandum order. See <u>Nowlin v. K Mart Corp.</u>, No. 97-2468-GTV (D. Kan. May 10, 1999). For purposes of this appeal, the following brief summary of those facts is sufficient. The instant appeal revolves around a period of nine working days—August 26 to September 4, 1996—during the course of Nowlin's employment with Kmart. During that nine-day period, Nowlin claims he was forced to work in jobs for which he was physically unsuited because he suffers from bilateral carpal tunnel syndrome as well as a condition called bilateral epicondylitis.

During the nine days in question, the third shift in which he worked as a checker was eliminated and combined with an earlier shift. After the elimination of the shift, employees with more seniority than Nowlin were given checker positions in the first and second shifts, while Nowlin was not. Instead, Kmart reassigned Nowlin to the job of freight handler in the shipping department. He complained of an inability to perform the job "because it was too much against doctor's restrictions and too many items were too heavy." (I Appellant's App. at 68.) At the time, a physician had restricted him to "a job that limits the repetitive

2

flexion-extension motions at both wrists and both elbows," as well as a "40-pound weight restriction, meaning he should not be required to lift greater than 40 pounds at any one time and should only lift smaller amounts than this on any type of repetitive basis." (II Appellant's App. at 697.)

Kmart reassigned him to several other tasks over the next nine days, some of which he complained violated his work restrictions, after which Kmart again transferred him to other tasks that did not violate his restrictions. On September 4, 1996, he told a Kmart human resources manager, Martha Engnehl, that he would not be working his shift that night because his arms and hands were aching. Engnehl offered to make an appointment for him with a physician, to which he agreed. When she called him back to report that she had obtained an appointment with a physician, she advised him that he should obtain definite restrictions from the physician regarding the specific jobs for which he was suited. The physician issued such restrictions, limiting him to working as a checker or in "put-a-way." ( Id. at 78.) On September 6, Nowlin spoke with Engnehl, informing her that he was quitting his job, despite her offer to place him in a position driving a forklift or checking in accordance with his restrictions. He stated he was "tired of messing with it," presumably meaning forklift driving and the job in general, and if she had any questions, she could call his lawyer. ( Id. at 80.)

3

In January and March 1997, Nowlin filed charges of discrimination with the Kansas Human Rights Commission ("KHRC") and the federal Equal Employment Opportunity Commission ("EEOC"), alleging constructive discharge in violation of the ADA and retaliation for filing a previous charge of disability discrimination. [1] In September 1997, he filed the instant lawsuit in United States District Court for the District of Kansas, alleging Kmart constructively discharged him on the basis of his disability in violation of the ADA, 42 U.S.C. §§ 12101 et seq., and ERISA, 29 U.S.C. § 1140, and in retaliation for exercising his rights under the ADA and ERISA, committed intentional infliction of emotional distress under Kansas law, and committed fraud and abuse under the Kansas workers' compensation law. The district court granted summary judgment to Kmart on all claims except the fraud and abuse claim, which it dismissed without prejudice for failure to exhaust administrative remedies. [2] This appeal followed.

## II

"We review the district court's grant of summary judgment de novo,

---

[1] The previous charge of disability discrimination was filed with the EEOC against Kmart in 1995. With regard to that previous charge, the EEOC declared itself "unable to conclude that the information obtained establishes violations of the statutes." (I Appellant's App. at 184.) Nowlin took no further legal action until the present action.

[2] The district court's dismissal of the fraud and abuse claim under Kansas workers' compensation law is not challenged in this appeal.

applying the same legal standard used by the district court. Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c). . . . [W]e view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999).

Turning first to Nowlin's claims under the ADA, that statute defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An impairment "substantially limits" a major life activity if the individual is unable to perform that activity or is significantly restricted in the ability to perform the major life activity compared to the general population. Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999) (citing 29 C.F.R. § 1630.2(j)(1)). In the present case, Nowlin claimed he was disabled for purposes of lifting and working.

With regard to lifting, the district court found that Nowlin could lift up to

5

forty pounds (a fact which is undisputed) and that he had failed to show that this was a significant restriction compared to the general population. But it is settled in our Circuit that plaintiffs need not present comparative evidence regarding the population as a whole in order to prove they are disabled. See Lowe v. Angelo's Italian Foods, Inc. , 87 F.3d 1170, 1173 (10th Cir. 1996). As for working, the district court again found Nowlin had failed to present "competent evidence that he is unable to perform a class of jobs or a broad range of jobs in various classes." Nowlin , No. 97-2468-GTV, at 13. Nowlin needed to show evidence that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). [3]

We need not sift through the evidence regarding Nowlin's disability under the ADA, however, because we hold that even if he is disabled, Kmart's efforts to accommodate him refute his claim of constructive discharge. To prove constructive discharge, plaintiffs must allege sufficient facts to demonstrate under "the totality of the circumstances," Yearous v. Niobrara County Mem'l

---

[3] As for Nowlin's claim that the court should have found he was "regarded as" disabled under the ADA, he failed entirely to present that claim before the district court below in his motion for summary judgment, and so it is waived. See Walker v. Mather (In re Walker) , 959 F.2d 894, 896 (10th Cir. 1992) (holding that it is a general rule that this Court will not consider an issue on appeal that was not raised below).

6

Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997) (citation omitted), "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign," Sanchez v. Denver Pub. Sch., 164 F.3d 527, 534 (10th Cir. 1998) (quoting Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir. 1986)), or that the employer, by its discriminatory actions, forced plaintiffs to choose between resignation or termination, see Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 978 (10th Cir. 1996).

> Among the factors we consider in determining the voluntariness of an employee's resignation are "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [s]he was permitted to select the effective date of resignation." By comparison, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate[s] the employee did not have the opportunity to make a free choice."

Yearous, 128 F.3d at 1356 (quoting Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir. 1992)) (further citations omitted). Given Kmart's attempt to accommodate Nowlin in various jobs,[4] there is no

_____

[4] Nowlin claims that "by K-Mart's own admission, [he] would have been required to endure the same pain and suffering he had endured for the previous twelve days for the immediate future, except when a checker was on vacation or sick leave." (Appellant's Br. at 35.) However, this misconstrues the undisputed record in this case, which indicates that on the day Nowlin resigned, Engnehl offered to employ him as a checker or forklift driver in accordance with his

(continued...)

7

genuine issue of material fact—despite his allegations of pain—as to whether the totality of the circumstances under which he had to work was "objectively intolerable" and not just "subjectively" so, such that "a reasonable person in [his] position would feel compelled to resign." Sanchez, 164 F.3d at 534. [5] That conclusion also disposes of his state law retaliatory discharge claim. In our judgment, there is no genuine issue as to whether Nowlin was discharged, constructively or otherwise. [6] Rather, he simply quit his job, stating he was "tired of messing with it," despite Kmart's efforts to accommodate him. (I Appellant's App. at 80.) [7]

---

[4](...continued)
restrictions, not in positions that would have violated those restrictions.

[5] Thus, on reviewing the record on the constructive discharge claim, we disagree with Nowlin's contention that "[t]he District Court failed to consider the facts [on summary judgment] in the light most favorable to the opposing party." (Appellant's Br. at 24.) We also disagree with his contention that the treatment other employees received, together with the evidence in the record, is sufficient in the present case to raise a genuine issue of material fact as to whether an employee in his position would feel compelled to resign.

[6] Nor was Kmart required to place him in a checker position to which his seniority did not entitle him. See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1170 (10th Cir. 1999) (en banc) ("[I]f other employees within the company have a legitimate contractual or seniority right to a vacant position, it is not considered vacant for reassignment to the disabled employee.").

[7] Based on our review of the record including the district court's memorandum order, we reject appellant's contention that the district court failed to consider the totality of the circumstances of his resignation in determining that no constructive discharge had occurred.

Finally, as to his intentional infliction of emotional distress claim, the district court found, among other things, that Kmart's conduct was not extreme and outrageous. "To prove the tort of outrage, a litigant must show: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe." Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman, 978 P.2d 922, 930 (Kan. 1999) (citing Smith v. Welch, 967 P.2d 727 (Kan. 1998)); see also Welch, 967 P.2d at 734 (indicating that under Kansas law, intentional infliction of emotional distress is the same as the tort of outrage). Given Kmart's efforts to accommodate Nowlin, we agree with the district court that there is no genuine issue of material fact as to whether Kmart's conduct rises to the level of being "atrocious and utterly intolerable in a civilized society" such that it might be deemed "extreme and outrageous." Miller, 978 P.2d at 930. We thus need not address whether the other elements of the Kansas tort of intentional infliction of emotional distress have been met.

**III**

The judgment of the district court is **AFFIRMED**.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

9

Carlos F. Lucero
Circuit Judge