(40 P.3d 333)
No. 86,846

JULIE L. DOSS, *Appellant*, v. RONALD MANFREDI, *Appellee*.

Opinion filed February 15, 2002.

*Ryan Hodge*, of Ray Hodge & Associates, of Wichita, for appellant.

*Nicholas S. Daily*, of Depew and Gillen, L.L.C., of Wichita, for appellee.

Before MARQUARDT, P.J., KNUDSON, J., and ROGG, S.J.

KNUDSON, J.: Julie Doss appeals the district court's grant of summary judgment in favor of Dr. Ronald Manfredi, a chiropractor. The issue on appeal is whether Manfredi owed a legal duty to Doss.

The controlling facts are not in dispute. Doss' personal injury protection (PIP) carrier, Traders Insurance Company (Traders), hired a claims company, which in turn hired Manfredi to review Doss' chiropractic treatment records and advise whether the chiropractic treatments were related to injuries Doss received in an automobile accident. Manfredi reviewed the records and concluded a portion of the chiropractic charges were not adequately documented as related to the accident. After Traders refused to pay some of the chiropractic bills, Doss filed suit against Manfredi, alleging a negligent evaluation. The district court, in granting summary judgment to Manfredi, found he owed no legal duty that would support the negligence claim.

On appeal, Doss argues her negligence claim is supported under a theory of negligent misrepresentation or, alternatively, under a theory of a duty owed to a third party by a tortfeasor. We conclude neither theory has legal merit under the uncontroverted facts and affirm the district court's grant of summary judgment.

269

In *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604-05, 876 P.2d 609 (1994), the Kansas Supreme Court adopted the tort of negligent misrepresentation, as defined in the Restatement (Second) of Torts § 552 (1976). Section 552 was quoted in *Mahler* as follows:

" '(1) *One who, in the course of his business, profession or employment*, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to *them* by *their* justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

" '(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

" '(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.' " (Emphasis added.) 255 Kan. at 604.

See *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 218, 4 P.3d 1149 (2000).

Based upon the uncontroverted facts, Doss' reliance on the Restatement (Second) of Torts § 552 is without legal merit. Manfredi, in his professional evaluation, provided information for the benefit of Traders, not Doss, and is subject to liability only to Traders if he failed to exercise reasonable care or competence in obtaining or communicating the information.

Doss also argues the negligence claim against Manfredi is supported under the Restatement (Second) of Torts § 324A (1964), adopted by the Kansas Supreme Court in *Schmeck v. City of Shawnee*, 232 Kan. 11, Syl. ¶ 4, 651 P.2d 585 (1982).

Before liability may be imposed under § 324A, there must be a showing that a defendant undertook, gratuitously or for consideration, to render services to another. See *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, 669, 792 P.2d 993 (1990). In order to meet

this requirement, the evidence must show the defendant, through affirmative action, assumed an obligation or intended to render services for the benefit of another. 246 Kan. at 674-75. "Without an affirmative act or an agreement, there is no duty owed under § 324A." *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 834, 877 P.2d 430 (1994). The extent of the undertaking defines the scope of the duty. *McGee v. Chalfant*, 248 Kan. 434, 442, 806 P.2d 980 (1991).

We find instructive *Smith v. Welch*, 265 Kan. 868, 967 P.2d 727 (1998). In *Smith*, the Supreme Court discussed whether and under what circumstances a physician may incur liability in performing an independent medical examination (IME). Smith was injured in an automobile accident and filed suit against another driver. She agreed to an IME by defendant's medical expert. During the examination, she was asked personal and inappropriate questions and was sexually battered by the examining doctor. Smith settled her claim for personal injuries from the automobile accident, but then filed an action against the physician for assault, battery, invasion of privacy, and related torts. The district court granted summary judgment in favor of the physician. On appeal, the Supreme Court noted that there was no physician-patient relationship when a physician performs an IME, and, therefore, the physician had no duty to treat the person he examined for illnesses or to diagnose illnesses other than to " 'conduct the examination in a manner not to cause harm to the person being examined.' " 265 Kan. at 881.

Here, Manfredi only reviewed the chiropractic records relating to the treatment of Doss without any IME. Under the reasoning expressed in *Smith*, we do not believe such a tenuous nexus between Doss and Manfredi is sufficient to establish a legal duty.

In *Ervin v. American Guardian Life Assur.*, 376 Pa. Super. 132, 545 A.2d 354 (1988), plaintiff applied for life insurance and took an EKG at the request of the insurance carrier. The carrier's physician examined the EKG, which disclosed cardiac abnormalities that the physician failed to discover or, in the alternative, to disclose to the plaintiff. Less than a month after the EKG, plaintiff suffered a heart attack and died. The *Ervin* court stated:

"[T]he defendant physician in the instant case owed no duty to the plaintiff's decedent either to discover his heart problem or, having discovered it, to inform

the decedent thereof. The defendant had been employed by American to advise the company whether the applicant was an insurable risk. He was not employed to make a diagnosis for the applicant or to treat the applicant for any condition which was discovered. Neither was there any evidence that the defendant, by giving the applicant advice or otherwise, had assumed a physician-patient relationship. In the absence of a physician-patient relationship between defendant and the applicant, the defendant physician did not owe a duty to the applicant to discover and disclose that the applicant was suffering from heart abnormalities." 376 Pa. Super. at 139.

The appellant in *Ervin* attempted to rely upon § 324A of the Restatement (Second) of Torts to create a duty on the part of the insurance carrier's physician where none existed under traditional medical malpractice cases. The *Ervin* court found § 324A inapplicable because the physician had not read the EKG to benefit or to treat anyone but merely to advise the insurance company whether it was being asked to insure someone who was a poor risk. 376 Pa. Super. at 140.

Based upon the above decisions and the uncontroverted facts of this case, we hold Manfredi had no duty to Doss under § 324A of the Restatement (Second) of Torts.

Affirmed.