(221 P.3d 107)
No. 101,159

AMY LOVITT, on Behalf of and as Next Friend of CASON "CASEY" BAHR, a Minor Child, *Appellants*, v. BOARD OF COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS, *Appellee*.

Opinion filed December 18, 2009.

*Pantaleon Florez, Jr.*, and *Wayne French*, of Topeka, for appellants.

*Jonathan C. Brzon*, assistant county counselor, for appellee.

Before GREENE, P.J., MCANANY, J., and LARSON, S.J.

MCANANY J.: In this appeal we consider whether plaintiff's claims for negligent and intentional infliction of emotional distress by a Shawnee County 911 operator can withstand a motion for summary judgment so as to permit plaintiff to proceed to trial.

The plaintiff is Amy Lovitt, mother and next friend of 13-year-old Cason Bahr. She brings this action on Bahr's behalf. Bahr was riding in his mother's automobile when she suffered a seizure, causing her car to leave the road and strike a street sign. Bahr called 911, seeking emergency assistance. The 911 dispatcher told Bahr she did not believe him and stated, "That is the worst fake cry I've

ever heard." The dispatcher then asked, "Do you know what you're doing? Cause it's a crime . . . filing a false report is a crime." The dispatcher hung up without sending assistance. The call lasted less than a minute. Shortly thereafter, Bahr flagged down a passerby, who called 911. This second 911 call was made about 30 seconds after the first call ended. This time a dispatcher sent help for Lovitt.

Lovitt commenced this action against the Board of County Commissioners of Shawnee County (County) based upon theories of outrageous conduct and negligent infliction of emotional distress. She claims damages for Bahr's mental and emotional injuries and distress, including "symptoms of both Post Traumatic Stress Disorder and also Adjustment Disorder with Anxious Mood." Bahr suffered no physical injury from the incident.

In its case management order, the district court set a deadline for plaintiff to disclose her expert witnesses and for the parties to complete discovery. The deadlines expired without any expert witness disclosure by plaintiff. After the close of discovery, the County moved for summary judgment on five alternative grounds: (1) the public duty doctrine; (2) immunity under the discretionary function exception to the Kansas Tort Claims Act, K.S.A. 2008 Supp. 75-6104(e); (3) lack of evidence of damages or that any claimed damages were proximately caused by the dispatcher's conduct; (4) no actionable claim for intentional infliction of emotional distress; and (5) no physical injury to support a claim for negligent infliction of emotional distress.

In her response to the County's motion, Lovitt set forth a statement of additional claimed uncontroverted facts regarding the nature of, extent of, and treatment for Bahr's mental and emotional state. In support, Lovitt attached her affidavit in which she recounted the diagnosis made by Jeri Stonestreet, LSCSW, to whom Lovitt took Bahr for a diagnosis. According to Lovitt, Stonestreet "related" Bahr's symptoms to the incident involving the 911 dispatcher.

The district court entered summary judgment in favor of the County on three alternative grounds: (1) the public duty doctrine, (2) immunity under the discretionary function exception to the Kansas Tort Claims Act, and (3) the lack of admissible evidence of

causation. The court found that plaintiff had either abandoned her claim for negligent infliction of emotional distress or chose not to vigorously pursue it because Bahr suffered no physical injury in the incident.

Lovitt appeals, claiming error by the district court: (1) in applying the public duty doctrine, (2) in applying the discretionary function exception, (3) in holding that plaintiff abandoned the claim for negligent infliction of emotional distress, and (4) in granting summary judgment on plaintiff's claim of outrage.

We need not recount the standards for the district court's consideration of a motion for summary judgment. They are well known to the parties and can be found in *U.S.D. No. 232 v. CWD Investments*, 288 Kan. 536, 555, 205 P.3d 1245 (2009), and *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009). On appeal, we stand in the shoes of the district court and examine the County's summary judgment motion de novo using the same standards that apply to the district court's consideration of such matters. See *Roe v. Kansas Dept. of SRS*, 278 Kan. 584, 591, 102 P.3d 396 (2004).

*Public Duty Doctrine*

The issue regarding the public duty doctrine centers on the question of whether the County owed a duty to Bahr when he made his 911 call for assistance. Lovitt's tort claims are predicated upon the County having breached a duty. The County is entitled to summary judgment on these claims if Lovitt cannot establish the existence of a duty. See *Dozier v. Dozier*, 252 Kan. 1035, 1041, 850 P.2d 789 (1993). Whether the County, through its 911 dispatcher, had a legal duty to Bahr presents a question of law appropriate for resolution by means of a motion for summary judgment. See *Roe*, 278 Kan. at 591-95; *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

The public duty doctrine provides that absent a special duty to the injured party, a governmental agency and its agents owe a duty to the public at large but not to an individual. *Potts v. Board of Leavenworth County Comm'rs*, 39 Kan. App. 2d 71, 81, 176 P.3d 988 (2008). A special duty to the injured party may arise when:

"(1) a special relationship existed between the governmental agency and the wrongdoer (*i.e.*, the wrongdoer was in the State's custody or care); (2) a special relationship existed between the governmental agency and the injured person (*i.e.*, the injured person was in the State's custody or care); or (3) the government agency performed an affirmative act that caused injury or made a specific promise or representation that under the circumstances created a justifiable reliance on the part of the person injured. [Citation omitted.]" 39 Kan. App. 2d at 81.

Lovitt has not alleged the existence of any special relationship to establish an exception to the doctrine and has alleged no promises by the dispatcher. The undisputed evidence establishes that the dispatcher made no affirmative promise to Bahr that she would send help. To the contrary, the dispatcher made it clear that she would not send help for Bahr's mother.

However, Lovitt argues, for the first time on appeal, that a special duty arose by reason of the County's affirmative representations, in promoting 911 as its emergency response system, that it would send help in response to a 911 call.

The County argues that Lovitt cannot raise this argument on appeal because it was never presented to the trial court. The County's argument ignores our de novo review of the County's summary judgment motion. Whether the public duty doctrine applies was raised and argued before the district court. In these de novo proceedings, we examine anew whether there remain genuine issues of material fact requiring a trial and, if not, whether the movant is entitled to judgment as a matter of law. This appeal provides the parties with the opportunity to raise new arguments insofar as they are confined to the factual record and to the issues addressed in the motion. Accordingly, we will consider this argument which arises from an issue raised in the motion. See *South v. McCarter*, 280 Kan. 85, 9495, 119 P.3d 1 (2005).

In the brief supporting its summary judgment motion, the County argued that no special relationship existed to bar application of the public duty doctrine. It also argued that "the Plaintiff cannot prove that he was entitled to specific protection due to his justifiable reliance on promises or representations of law enforcement officers." In response to the motion, Lovitt addressed the public duty doctrine but failed to direct the court to any fact in the

record relating to any detrimental reliance by Bahr, a necessary fact to create an exception to the doctrine. While Lovitt set forth additional claimed uncontroverted facts in her brief opposing the motion, none of those additional facts relates to any claimed detrimental reliance.

Once the County sought refuge in the public duty doctrine, it was incumbent upon Lovitt to direct the court to facts in the record which support the application of an exception to the doctrine if she contends the exception applied. See *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 520, 856 P.2d 1313 (1993). Lovitt argued against application of the doctrine, but she did not assert facts which would create an exception to it.

Further, though this issue has not been directly addressed previously in Kansas, Lovitt's argument against application of the public duty doctrine has been rejected by courts in other states under their own versions of the doctrine.

In *Cummins v. Lewis County*, 124 Wash. App. 247, 98 P.3d 822 (2004), *aff'd* 156 Wash. 2d 844, 133 P.3d 458 (2006), a wrongful death action based upon failure to respond to a 911 call, the Washington Court of Appeals and then the Washington Supreme Court affirmed the entry of summary judgment against plaintiff based on her failure to demonstrate the existence of facts to support application of the special relationship exception to the public duty doctrine. The Supreme Court declared that a special relationship arises when " ' "(1) there is a direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff." ' [Citations omitted.]" 156 Wash. 2d at 854. "Express assurance" means "an affirmative promise or agreement to provide assistance." 156 Wash. 2d at 855. The Washington Court of Appeals, affirmed by the Washington Supreme Court, observed:

"Cummins argues that the special relationship exception's second element, requiring express assurance from a public official, is satisfied 'hundreds of times by government entities on a daily basis' that describe the 911 system through yellow pages, billboards, and radio and TV public service announcements. . . . This overbroad argument fails to cite to the record, contradicts the public duty doc-

trine's central requirement that liability not attach to a government entity's duty to the public at large, and conflicts with all four of the doctrine's exceptions that require a reasonable degree of specificity." *Cummins*, 124 Wash. App. at 254-55.

Similarly, in *Muthukumarana v. Montgomery County*, 370 Md. 447, 805 A.2d 372 (2002), the court found that the duty of the 911 dispatcher was to the public at large and not to a specific individual:

"By its terms, [Maryland's] statutory scheme [requiring all counties to operate an enhanced 911 system] does not create an emergency system to benefit a discrete group of persons. Rather, in providing for such broad services, it recognizes that, at different times, any and all citizens of, or visitors in, Maryland may find it necessary to utilize that system for innumerable purposes. In our view, acting to protect or assist a 'specific group of individuals,' sufficient to create a special relationship, involves more than general actions taken to serve members of the public at large in need of emergency telephone services." 370 Md. at 499.

The public duty doctrine was also found not to apply under District of Columbia law in *Wanzer v. District of Columbia*, 580 A.2d 127, 132 (D.C. 1990), a similar action for failure to respond to a 911 call.

Lovitt's argument, unsupported in the record, that the County made representations to the public through widespread advertising of the 911 system is directed to the notion of a duty to the public at large rather than a duty to specific individuals.

Finally, Lovitt's claim of detrimental reliance is not based on any claimed representations by the 911 dispatcher. The 911 dispatcher's response to Bahr's call was that no help would be forthcoming. Bahr did not detrimentally rely on this message. He sought out someone else to make a 911 call for him. When that happened, help was forthcoming. Thus, independent of Lovitt's failure to show a "special relationship" to invoke an exception to the public duty doctrine, she fails to present facts to establish a triable issue on the element of detrimental reliance.

In *Cuffy v. City of New York*, 69 N.Y.2d 255, 260, 505 N.E.2d 937 (1987), a case involving a claim that the police failed to provide promised protection, the court considered the application of the special duty exception to the general rule that "a municipality may not be held liable for injuries resulting from a simple failure to provide police protection." The court concluded that "when the

reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the 'special duty' exception is then no longer justified." 69 N.Y.2d at 261.

Our de novo review of the County's motion satisfies us that there is no genuine issue of material fact with respect to application of the public duty doctrine which bars Lovitt's claims, and the County is entitled to judgment as a matter of law. The district court did not err in so ruling.

*Discretionary Function*

Lovitt's claims are subject to the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, which, with certain exceptions, imposes tort liability "for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 2008 Supp. 75-6103(a).

The district court found that the discretionary function exception in K.S.A. 2008 Supp. 75-6104(e) applied to insulate the County from liability for Bahr's claimed damages. That statute provides:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 2008 Supp. 75-6104(e).

Our Supreme Court has held that "the proper test for applying the discretionary function exception look[s] to the nature and quality of the discretion exercised. Under this test, the court focuses on whether the act in question is one the legislature intended to shield from liability." *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 645-46, 35 P.3d 815 (2001), *cert. denied* 537 U.S. 841 (2002).

Without any factual basis in the record, the County argues that its 911 operators exercise discretion when dispatching officers and ambulances. It claims, again without authority in the record, that its dispatchers' duties include distinguishing between legitimate and prank calls.

It seems reasonable that the County should authorize its 911 dispatchers to exercise a degree of discretion in the handling of 911 calls. We do not know the actual nature and extent of that discretion. The County would have us conclude that since the exercise of discretion is reasonable, it is a fact.

K.S.A. 60-256 and Supreme Court Rule 141 (2009 Kan. Ct. R. Annot. 225) set forth a detailed protocol for proceedings on motions for summary judgment. If the fact that 911 dispatchers exercise discretion is a fact the County wishes to rely upon in support of its motion, that fact must be addressed in the manner described in Rule 141(a). It must be set forth in a separately numbered paragraph as an uncontroverted contention of fact with a precise reference to where in the record it can be found. This rule is not mere "fluff"; it serves a necessary purpose, and it means what it says. See *McCullough v. Bethany Med. Center*, 235 Kan. 732, 736, 683 P.2d 1258 (1984).

The County has failed to comply with Rule 141 in this regard. Consequently, the factual predicate for the County's argument, that the discretionary function exception applies, is not available given the present state of the record. Based on the record presently before us, the County has failed to demonstrate that it is entitled to judgment as a matter of law on the discretionary function exception to tort liability under the Kansas Tort Claims Act, K.S.A. 2008 Supp. 75-6104(e).

## Negligent Infliction of Emotional Distress

The County argued to the district court that Lovitt may not proceed on Bahr's claim for negligent infliction of emotional distress because he suffered no physical injury in the incident. The district court observed that

"from a review of the Response to the Defendant's Motion for Summary Judgment, it appears that the Plaintiff abandoned (or at least decided not to vigorously

pursue) any negligence claim in this case because of the lack of any physical injury."

*Ware v. ANW Special Educational Coop. No. 603*, 39 Kan. App. 2d 397, 401, 180 P.3d 610 (2008), presents an extensive and recent discussion of the issue which we need not recount here. The current state of Kansas law is that a plaintiff claiming damages for the negligent infliction of emotional distress must demonstrate a physical injury or a physical impact which causes an actual injury. See *Grube v. Union Pacific R.R. Co.*, 256 Kan. 519, 522, 886 P.2d 845 (1994).

In paragraphs 10 and 11 of its statement of uncontroverted facts, the County asserts that plaintiff does not allege any physical injury as a result of this incident. Lovitt concedes that this statement is true. Thus, there is no genuine issue of material fact that impedes granting the County judgment as a matter of law on plaintiff's claim of negligent infliction of emotional distress.

### Outrage

The tort of outrage is also known as intentional infliction of emotional distress. *Hallam v. Mercy Health Center of Manhattan, Inc.*, 278 Kan. 339, 340, 97 P.3d 492 (2004). To establish the tort of outrage, a plaintiff must present evidence which establishes that the defendant committed intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the plaintiff extreme and severe mental distress. See *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 257, 978 P.2d 922 (1999); *Smith v. Welch*, 265 Kan. 868, 876, 967 P.2d 727 (1998); PIK Civ. 4th 127.70.

Before submitting a claim of outrage to a jury, the district court must make a threshold determination that (1) the defendant's conduct may be regarded as sufficiently extreme and outrageous to permit recovery under the law and that (2) the plaintiff's mental distress was of such a nature that no reasonable person should have been expected to endure it under the circumstances. See *Smith*, 265 Kan. at 876.

Here, the district court concluded that Lovitt failed to meet the threshold requirements necessary to submit Bahr's outrage claim to the jury. The district court stated:

"Although the 911 dispatcher in the present case clearly made a mistake when viewed in 20-20 hindsight, and her response could be viewed by a reasonable person to have been unprofessional, the record does not reflect that the conduct was 'so extreme and outrageous as to permit recovery.' Likewise, the Court does not find sufficient evidence in the record to establish that the 911 dispatcher caused emotional distress which was [']so severe and extreme that no reasonable person should be expected to endure it.' "

Unlike in claims of negligent infliction of emotional distress, bodily harm is not a prerequisite to a claim of intentional infliction of emotional distress. See *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175 (1981). However, plaintiff must establish evidence of mental distress which is extreme and severe and causally connected to the defendant's outrageous conduct. As noted earlier, Bahr's 911 call took about a minute and was followed by a second 911 call about 30 seconds later which brought help to Bahr's mother.

The only evidence of extreme and severe mental distress came from Lovitt's hearsay affidavit in which she reported that (1) she observed after this incident that her son was "extremely anxious and watchful of anyone with whom he would ride"; (2) as a result, she took him to a social worker for an evaluation; (3) the social worker opined that Bahr suffered from "posttraumatic stress disorder symptoms and adjustment disorder with anxious mood," which the social worker related to the 911 incident; and (4) since the social worker's evaluation, Bahr has continued to exhibit these symptoms.

The district court correctly found that "posttraumatic stress disorder symptoms and adjustment disorder with anxious mood" are not conditions which would be apparent to the average layperson. Accordingly, expert testimony would be necessary to establish the existence of these conditions in Bahr and to determine their cause. See *Singh v. Krueger*, 39 Kan. App. 2d 637, Syl. 2, 183 P.3d 1, *rev. denied* 286 Kan. 1180 (2008). In the course of discovery, Lovitt failed to identify an expert to address these issues. Instead, she

attempted to introduce into the record the social worker's opinion through her own affidavit. The district court, on the County's motion, struck these hearsay statements in Lovitt's affidavit. Lovitt does not challenge the district court's hearsay ruling on appeal. In any event, applying the de novo standard of review, we concur with the district court's action in striking the hearsay statements.

With no testimony from the social worker, assuming for the moment that the social worker would have been competent to render an opinion on these matters, Lovitt is left with no evidence of her son's emotional distress and no evidence of causation other than her own observations in her affidavit that Bahr has been extremely anxious and watchful after this incident. Such evidence does not satisfy the threshold of extreme and severe mental distress of such a nature that no reasonable person should have been expected to endure it under the circumstances. See *Smith*, 265 Kan. at 876. Further, Lovitt's *post hoc, propter hoc* observations do not establish causation.

We conclude from our independent examination that there remains no genuine issue of material fact on Lovitt's claim on behalf of her son for intentional infliction of emotional distress, and the County is entitled to judgment as a matter of law on this claim.

Affirmed.